IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GUY B. SCOTT, SR., | ) |
| | ) |
| v. | ) No. 3:10-0151 |
| | ) Judge Trauger/Bryant |
| PORTER ADVERTISING, LLC, et al. | ) |

To: The Honorable Aleta Trauger

## REPORT AND RECOMMENDATION

### I. Introduction

By order entered March 5, 2010 (Docket Entry No. 3), and affirmed April 29, 2010 (Docket Entry No. 23), this matter was referred to the undersigned for pretrial scheduling and management.

Plaintiff Guy Scott, Sr., a resident of Mt. Juliet, Tennessee, filed this *pro se* action against defendants Porter Advertising, Richard Peterson, Steve Rankin, Teri Horsely, and Nila Prater for breach of contract, fraudulent misrepresentation, and violations of his civil and constitutional rights. (Docket Entry No. 1.) He seeks both compensatory and punitive damages. (Id.) Defendants have filed a motion to dismiss for lack of subject matter and personal jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted. (Docket Entry No. 16.) As further explained below, the undersigned recommends that defendants' motion to dismiss plaintiff's action for lack of subject matter and personal jurisdiction be GRANTED.

## II. Factual Background

Plaintiff alleges the following facts in support of his complaint:

On August 28, 2008, plaintiff through his agent John Moran, an Ohio resident, entered into a contract as a principal with Porter Advertising for the rental of billboard space for thirty (30) days in Preble County, Ohio. (Docket Entry No. 1.) Porter Advertising and the other named defendants, all of whom are employees of Porter Advertising, are domiciled in Ohio, and their work is confined entirely to Ohio. (Id.; Docket Entry No. 17.) Plaintiff's rental billboard advertised a website designed both to garner interest in the plight of a current Ohio state prison inmate and to memorialize the deaths of several individuals. (Id.)[1] Defendants were involved in designing the billboard, and plaintiff's agent indicated his pleasure with the final result. (Id.) The entire contract cost was $490.00. (Docket Entry No. 16, Ex.B.) Plaintiff submitted a money order in his wife's name as payment. (Docket Entry No. 27.)

After the billboard was raised on September 8, 2008,[2] members of the community

---

[1] The billboard directed viewers to a website where they could "help save Billy Scott." (Docket Entry No. 16, Ex.C.) Two lines on the billboard stated, "Paid for by your true friends / Lesa Buckley, Donnie Marker, Melinda Newcomb, David Smelser." Id. Plaintiff alleges in argument that "R.I.P" was meant to be placed before the names, in order to designate it as a memorial, but that defendants chose to leave the designation out. (Docket Entry No. 29.) One of the decedents was the individual Billy Scott was convicted of murdering. (Docket Entry No. 17.)

[2] Plaintiff's complaint alleges the billboard was raised on November 8, 2008, but the circumstances of the event as he describes indicate that he meant September 8, 2008. (Docket Entry No. 1.) The contract confirms that the initial date to display the billboard was September 5, 2008, and that posting of the billboard would take place within five (5) days. (Docket Entry No. 16, Ex.B.)

expressed to the defendants their opposition to the billboard. (Docket Entry No. 1.) The defendants received both threats of death and discontinued business relationships. (Id.) On September 10, 2008, defendant Rankin, sales manager, contacted plaintiff's agent concerning whether plaintiff had permission to use the names of the decedents on the billboard. (Id.)[3] Within the next two days, defendants had covered the reference to the names without authority from plaintiff's agent, and finally removed the entire billboard on September 16, 2008. (Id.) Plaintiff's money was refunded to him at the request of his agent. (Docket Entry Nos. 17 & 29.) Plaintiff then filed this suit under diversity jurisdiction on February 16, 2010. (Docket Entry No. 1.)

### III. Conclusions of Law

A. Standard of Review

A motion to dismiss may be granted under Federal Rule of Civil Procedure 12 for lack of subject matter jurisdiction, lack of personal jurisdiction, or failure to state a claim. The court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although Federal Rule of Civil Procedure 8(a)(2) requires merely "a short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible.

---

[3] A fact dispute exists as to whether defendants were successful in contacting plaintiff's agent and how much time he was given to respond to their request regarding plaintiff's permission to use the names of the decedents before defendants partially covered the billboard. (Docket Entry Nos. 1 & 17.) However, for purposes of the motion to dismiss, the well-pleaded allegations of plaintiff's complaint are presumed true.

3

Bell Atlantic Corp.v. Twombly, 550 U.S. 544, 556 (2007). He must plead well enough so that his complaint is more than "a formulaic recitation of the elements of a cause of action." Id. at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). While a *pro se* complaint is "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), the court, nevertheless, need not accept legal conclusions or unwarranted factual inferences as true. Iqbal, 129 S. Ct. at 1949-50; Moran v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

B. Subject Matter Jurisdiction

1. Federal Question Jurisdiction

The federal courts have subject matter jurisdiction over a cause of action when there is a federal question at stake or when there is complete diversity of citizenship among the parties. 28 U.S.C. §§ 1331, 1332 (2006). Federal question jurisdiction arises in a controversy over a constitutional right or a law of the United States. Id. § 1331. Plaintiff has filed a complaint for violations of civil and constitutional rights actionable under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 (2006). (Docket Entry No. 1.) While plaintiff himself has not specifically invoked federal question jurisdiction, his complaint should be adjudged from its substance, rather than its form. See Franklin v. Rose, 765 F.2d 82, 84-85 (6th Cir. 1985) ("The

4

appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition 'to encompass any allegation stating federal relief.'") (internal citations omitted).

Sections 1981, 1982, 1985, and 1986 provide for equal treatment under the law for all citizens, but plaintiff fails to allege any act of discrimination in his complaint on behalf of the named and served defendants. (Docket Entry No. 1.)[4] Plaintiff fails to invoke federal question jurisdiction with regard to these claims. Moreover, section 1983 provides for redress if a plaintiff is deprived of his civil rights under "color of state law." Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008) ("In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiffs must establish that a person acting under the color of state law deprived them of a right secured by the Constitution or laws of the United States."). Thus, his section 1983 claims against private defendants Porter Advertising, Richard Peterson, Steve Rankin, Teri Horsely, and Nina Prater are insufficient and do not invoke federal question jurisdiction, as these defendants were not acting under authority of state law. (Docket Entry No. 1.) Even under the liberal pleading standard to which *pro se* plaintiffs are held, Erickson, 551 U.S. at 94, plaintiff here has failed to sufficiently invoke federal question jurisdiction under these statutes with regard to the named and served defendants. (See Docket Entry No. 1.)

---

[4] Additionally, plaintiff's complaint against the named defendants fails to allege a conspiracy, as required by sections 1985 and 1986. (Docket Entry No. 1.) He instead pleads that the named defendants were being pressured, through threats of murder and reduced business, to breach plaintiff's contract. (Id.) Such economic and physical threats suggest that defendants were coerced into breaching the contract – not that they were willing parties to a conspiracy.

5

Neither do plaintiff's section 1983, 1985, and 1986 claims against "unknown actors being elected and/or appointed officials under employ of local government within Preble County," Ohio, successfully invoke federal question jurisdiction. Plaintiff has failed to name or serve any defendants in connection with this claim. (Docket Entry No. 1.) Although a court must provide a *pro se* plaintiff opportunity to amend a complaint, the plaintiff here has not asked for leave to amend, McCallum v. Gilless, 38 Fed. Appx. 213, 216 (6th Cir. Mar. 21, 2002), nor will the court *sua sponte* allow a *pro se* plaintiff leave to amend unless it appears he not only has a meritorious claim, id., but also that he suffered serious harm. Gordon v. England, 354 Fed. Appx. 975, 981-82 (6th Cir. Dec. 3, 2009). Assuming, for the sake of argument, plaintiff has a meritorious claim, he suffered no serious harm, as his money was refunded in full. (Docket Entry Nos. 17 & 29); compare Berndt v. Tennessee, 796 F.2d 879, 882-83 (6th Cir. 1986) (holding that a plaintiff's claim regarding beatings and inadequate medical care was of a sufficiently serious nature to warrant unrequested amendment).[5]

In light of the foregoing, there is no federal question jurisdiction here, and plaintiff's action in federal court (Docket Entry No. 1) must rest on diversity jurisdiction.

---

[5] The undersigned notes that the statute of limitations for claims actionable under the federal statutes plaintiff cites (Docket Entry No. 1) has likely run. These federal causes of action adopt the personal injury statute of limitations of the state in which the suit is brought, Wilson v. Garcia, 471 U.S. 261, 275-80 (1985), which in Tennessee is one year. Tenn. Code Ann. § 28-3-104 (2010). The incidents complained of occurred from September 2008, to September 16, 2008, and the action was not filed until February 16, 2010. (Docket Entry No. 1.)

6

2. Diversity Jurisdiction

a. Diversity of Citizenship

Diversity jurisdiction exists in a suit between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. A corporation is deemed a citizen of a state in which it is incorporated and has its principal place of business, id. § 1332(c)(1), and where there are multiple defendants, diversity must be complete. Exxon Mobile Corp. v. Allapattah Servs., 545 U.S. 546, 553-54 (2005).

Plaintiff here is a resident of Tennessee, while all defendants are domiciled in Ohio. (Docket Entry No. 1.) Defendants argue that plaintiff is not a party to the contract and that his residency should not be counted when evaluating diversity jurisdiction, as he lacks standing to assert any breach of contract claims against defendants. (Docket Entry No. 17.) However, plaintiff alleges that he acted through an agent as a principal, making him a party to the contract with the right to bring suit on that contract. See Scott's Hollow Joint Venture v. Xanadu of Hermitage, No. 01-A-01-9207-CH-00278, 1992 Tenn. App. LEXIS 1002, at *7 (Tenn. Ct. App. Dec. 23, 1992); Docket Entry No. 1. While defendants are correct that "bald assertions and personal opinions will not suffice" as well-pleaded allegations, Haliburton-Bryant v. Middle Tenn. State Univ., No. 3:08-0269, 2009 U.S. Dist. LEXIS 78719, at *5 (M.D. Tenn. Jul. 20, 2009) (quoting Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), whether an agency relationship exists is determined by the circumstances. National Counsel on Compensation Ins. v. Hopkins, No. 1:92-cv-082, 1995 U.S. Dist. LEXIS 21030, at *82 (E.D.

7

Tenn. Dec. 19, 1995). An agreement, contract, or understanding of the agency relationship is not necessary. Id. Plaintiff's complaint, taking into account that plaintiff is proceeding *pro se*, see Erickson, 551 U.S. at 94, alleges a sufficient agency relationship for the purposes of this motion, and complete diversity exists here. See National Counsel on Compensation Ins., 1995 U.S. Dist. LEXIS 21030, at *82; Docket Entry No. 1.

### b. Amount in Controversy

Furthermore, the amount in controversy is met when the plaintiff can in good faith claim the amount sought in the complaint. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961). A plaintiff thus may not seek damages above $75,000 merely to assert federal diversity jurisdiction. Mitan v. Int'l Fidelity Ins. Co., 23 Fed. Appx. 292, 297 (6th Cir. Oct. 3, 2001). The validity of the amount in controversy is determined from the perspective of the plaintiff, specifically focusing on the "economic value of the rights he seeks to protect." Woodmen of the World/Omaha v. Scarbro, 129 Fed. Appx. 194, 195-96 (6th Cir. Apr. 18, 2005) (quoting Buckeye Recyclers v. Chep USA, 228 F. Supp. 2d 818, 821 (S.D. Ohio 2002)). Yet, "when it is inconceivable . . . that a plaintiff will recover $75,000 in damages," the amount in controversy is not met and jurisdiction is denied. Ozormoor v. T-Mobile USA, Inc., 354 Fed. Appx. 972, 973 (6th Cir. 2009). Such denial usually occurs "only when state law categorically bars the plaintiff from recovering the necessary amount." Id.

When federal jurisdiction is based on diversity of citizenship, "a federal court must apply the choice of law rules of the state in which it sits." Insituform Techs., Inc. v. Per

8

Aarsleff A/S, 534 F. Supp. 2d 808, 811 (W.D. Tenn. 2008). Tennessee law follows the principle of *lex loci contractus*, where the courts apply the law of the state in which the contract was executed if the parties have shown no intent otherwise. Southeast Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 672 n.8 (6th Cir. 2006). The billboard contract contains no choice of law clause and the contract was executed in Ohio, so Ohio law will apply to plaintiff's contract claims. (Docket Entry No. 16, Ex.B.) Ohio law will also apply to plaintiff's fraudulent misrepresentation claim because that state has a more substantial relationship to the litigation than Tennessee. See Insituform Techs., Inc., 534 F. Supp. 2d at 811. In considering which state has a more significant relationship to the litigation, the court takes into account several factors: (1) the place where the plaintiff acted in reliance upon the defendant's representations; (2) the place where the plaintiff received the representation; (3) the place where the defendant made the representation; (4) the place where the parties are domiciled; (5) the place of the tangible object of the parties' transaction; and (6) the place where plaintiff is to render performance. Id. at 811-12. Although plaintiff heard the representation in Tennessee and likely paid for defendants' services with a funds on account in a Tennessee bank, Ohio has a more substantial relationship to the litigation. (Docket Entry Nos. 1 & 27.) Ohio defendants made the representations in Ohio, the contract was executed in Ohio, the services rendered were in Ohio, and thus the court should apply Ohio law to the breach of contract and fraudulent misrepresentation claims. (Docket Entry No. 1.)

As noted previously, the amount in controversy here must be alleged in good faith to

9

Case 3:10-cv-00151 Document 34 Filed 06/17/10 Page 9 of 15 PageID #: 111

exceed $75,000. 28 U.S.C. § 1332; Horton, 367 U.S. at 353. Plaintiff here seeks $100,000 in compensatory and punitive damages from defendants for each of the two alleged breaches of the same contract and for one instance of fraudulent misrepresentation, for a total of $300,000 in damages for a $490 contract. (Docket Entry No. 1.)[6]

Plaintiff cannot recover $200,000 for his breach of contract claims. (Docket Entry No. 1.) Contract law seeks, if not to put the injured party in the position he would have held had the contract been performed, Ingram v. Freed, No. 1455, 1991 Ohio App. LEXIS 3507, at *11-12 (Ohio Ct. App. July 23, 1991), to compensate the injured party for the detriment he incurred. See Miller v. Lindsay-Green, Inc., No. 04AP-848, 2005 Ohio App. LEXIS 5696, at *58-59 (Ohio Ct. App. Dec. 1, 2005). In order to receive damages that put the plaintiff in the position he would be in had the contract been fulfilled, a plaintiff must allege damages naturally flowing from the breach of the contract and which are foreseeable by both parties at the time of contracting. Deitsch v. Music Co., 453 N.E. 2d 1302, 1303-04 (Ohio Mun. Ct. 1983). Thus, relief for emotional distress is unavailable in a breach of contract claim under Ohio law. Homecomings Fin. Network, Inc. v. Negrea, No. 2008-L-010, 2008 Ohio App. LEXIS 4985, at *8 (Ohio Ct. App. Nov. 14, 2008). Neither are punitive damages generally awarded in contract claims because damages for breach of contract are intended not to

---

[6] As stated earlier, the federal question claims are insufficient, and the millions of dollars of damages sought in connection with these claims are not calculated in the total for the amount in controversy. See Ozormoor, 354 Fed. Appx. at 973 (holding that a plaintiff has not met the amount in controversy if it is "apparent, to a legal certainty, that the plaintiff cannot recover the amount named") (internal citations omitted).

10

punish the breaching party but to compensate the injured one. Decastro v. Wellston City Sch. Dist. Bd. Of Educ., 761 N.E.2d 612, 616-17 (Ohio 2002). Accordingly, a plaintiff may recover punitive damages if an independent tort, such as fraud, accompanies a breach of contract, but the punitive damages attach to the tort, not the contract. Kochler v. Pepsi Americas, Inc., 268 Fed. Appx. 396, 407 (6th Cir. Mar. 6, 2008).

Plaintiff has alleged no damages resulting from the breach of contract other than emotional distress and punitive damages, (Docket Entry No. 1.), and Ohio law prohibits plaintiff from recovering either, unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. Homecomings Fin. Network, Inc., 2008 Ohio App. LEXIS 4985, at *8; Decastro, 761 N.E.2d at 616-17. Plaintiff has not claimed tort damages resulting from the act of removing the billboard, nor even alleged direct damages resulting from the breach. See Miller, 2005 Ohio App. LEXIS 5696, at *58-59; Docket Entry No. 1. Because the money he paid for the billboard contract was returned in full to him, plaintiff has already been placed in the position he was in had the contract not been executed (Docket Entry Nos. 17 & 29). Thus, plaintiff cannot in good faith allege the amount in controversy to exceed $75,000, much less the $200,000 he seeks for breach of contract. See 28 U.S.C. §1332; Horton, 367 U.S. at 353.

Neither may plaintiff recover the $100,000 damages he seeks for his fraudulent misrepresentation claim. (Docket Entry No. 1.) Under Ohio law, "an action arising out of contract that also is based upon tortious conduct must include actual damages attributable to

11

the wrongful acts of the alleged tortfeasor in addition to those attributable to the breach of the contract." E-Poch Props. V. TRW Automotive U.S., No. 1:05CV1669, 2005 U.S. Dist. LEXIS 28911, at *5 (N.D. Ohio Nov. 15, 2005). Again, plaintiff does not allege an injury redressible under state law other than the breach of the contract or the resulting emotional distress he claims to have suffered. (Docket Entry Nos. 1 & 29.) Because his contract money was recovered, he has nothing to recover in actual damages. (See Docket Entry Nos. 17 & 29.) Without actual damages, punitive damages cannot follow, and plaintiff cannot recover the amount in controversy on his fraudulent misrepresentation claim. Decastro, 761 N.E.2d at 616-17. For the foregoing reasons, state law prevents plaintiff from meeting the amount in controversy requirement of diversity jurisdiction.

In sum, the undersigned concludes that defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction should be GRANTED.

### C. Personal Jurisdiction

Alternatively, defendants move for dismissal of the complaint for lack of personal jurisdiction. (Docket Entry No. 17.) A nonresident defendant's minimum contacts with the forum state must be sufficient so that his being haled into the forum state comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co.v. Wash., 326 U.S. 310, 316 (1945). Because the defendants here do not have "continuous and systematic" contacts with the state of Tennessee sufficient for general jurisdiction, Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984) (holding that one contact with a forum state

12

cannot be "continuous and systematic"), specific jurisdiction, i.e., jurisdiction that exists over a suit arising out of defendants' contacts with the forum, must be found for the court to render a judgment over the defendants. See Citizens Bank v. Parnes, No. 09-1306, 2010 U.S. App. LEXIS 9129, at *9 (6th Cir. May 4, 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court . . ."). When determining personal jurisdiction in a diversity action, the law of the forum state applies. Cont'l First Fed. Inc. v. Watson Quality Ford, Inc., No. 3:08-0954, 2009 U.S. Dist. LEXIS 59111, at *15-16 (M.D. Tenn. July 9, 2009).

Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214 (2010), reaches up to the limits of constitutional due process. Smith v. Home Depot USA, Inc., 294 Fed. Appx. 186, 189 (6th Cir. Sept. 17, 2008). The Sixth Circuit has devised a three-part test to determine whether specific jurisdiction over a defendant is consistent with due process. Music City Coach, Inc. v. Star City Coach Works, Ltd., No. 3:10-cv-00115, 2010 U.S. Dist. LEXIS 32917, at *20 (M.D. Tenn. Apr. 2, 2010). "First the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Id. (quoting Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

The defendant must have "purposefully avail[ed]" himself of the forum state in such a

13

way that he was "invoking the benefits and protections of [the state's] laws." Burger King Corp.v. Rudzewicz, 471 U.S. 462, 474-75 (1985). The defendant himself must have sought out and created the contacts with the forum state, but a contract alone with a plaintiff in the forum state is not sufficient to show purposeful availment. Music City Coach, Inc., 2010 U.S. Dist. LEXIS 32917, at *21-22. Instead, the actual course of dealings of the parties are important. Id. at *22, 26 (holding that a "lengthy . . . dispute," consisting of exchanged communications, payments, and services to and from Tennessee for over a year met the purposeful availment standard).

Although the plaintiff's burden to demonstrate a defendant's purposeful availment is "relatively slight," id. at *25, plaintiff here has failed to meet it. Defendants do not solicit or provide services in Tennessee. (Docket Entry No. 17.) All communications pertaining to the transaction took place in Ohio between Ohio residents, as plaintiff's agent and all defendants are domiciled in Ohio. (Id.) Finally, the contract was executed, performed, and allegedly breached in Ohio. (Id.)

Because purposeful availment is an indispensable element to the Sixth Circuit's specific jurisdiction test, See Music City Coach, Inc., 2010 U.S. Dist. LEXIS 32917, at *20-21, and because plaintiff has failed to demonstrate this element, the other parts of the test need not be assessed. Defendants do not have sufficient, minimum contacts with Tennessee such that they could reasonably expect to be haled into court here. See id. at *26-27. Accordingly, this court may not properly render judgment over them. Citizens Bank, 2010 U.S. App.

LEXIS 9129, at *9.

In sum, the undersigned further concludes that, alternatively, defendants' motion to dismiss for lack of personal jurisdiction should be GRANTED.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that the defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction (Docket Entry No. 16) be **GRANTED**. Alternatively, the Magistrate Judge recommends that the defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction (Id.) be **GRANTED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 575 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 17th day of June, 2010.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE

15